UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| ETHEL D. HALLOCK, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 2:10-cv-374-DBH |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant | ) | |

# REPORT AND RECOMMENDED DECISION[1]

In this Supplemental Security Income ("SSI") appeal, the plaintiff contends that the administrative law judge erred by failing adequately to investigate her applications, making factually erroneous findings, and wrongly rejecting the opinions of her treating medical professionals. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from a history of cervical fusion, status post right knee replacement, a history of bursitis, obesity, and mild degenerative disc disease of the lumbar spine, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), findings

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me by telephone on September 13, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

2-3, Record at 10-11; that she retained the residual functional capacity ("RFC) to perform the full range of sedentary work, Finding 4, *id.* at 11; that she was unable to perform any past relevant work, Finding 5, *id.* at 14; that, given her age (a younger individual on the date the application was filed), education (at least high school), work experience, and RFC, application of the Medical-Vocational Rules found in Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") directed a finding that there were jobs existing in significant numbers in the national economy that the plaintiff could perform, and that, therefore, she had not been under a disability, as that term is defined in the Social Security Act, at any time since the date her application was filed, Findings 5-10, *id.* The Decision Review Board selected the decision for review but failed to act within the required 90 days, *id.* at 1, making it the commissioner's final determination, 20 C.F.R.§ 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence

in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Medical Expert

The plaintiff contends that the administrative law judge "failed to investigate and [d]evelop the facts and develop the arguments both for and against the granting of benefits[,]" citing *Savoy v. Massanari*, No. 01-73-B, 2001 WL 1502585 (D. Me. Nov. 26, 2001). [Itemized Statement] (Docket No. 12) at [10]-[11]. In that case, the Appeals Council, the administrative predecessor of the Decision Review Board, had remanded the case to the administrative law judge, directing him to develop the record further, which he had not done. *Savoy*, 2001 WL 1502585 at *4. Because of the "clear directive of the Appeals Council," the further development necessary was evident. *Id.*

In this case, the Decision Review Board did remand the plaintiff's claim, but with a direction to the administrative law judge to "further evaluate the claimant's work activity after the alleged onset date and, as appropriate, [] proceed with the sequential disability evaluation process." Record at 7. I see nothing in the record to suggest that the administrative law judge did not do exactly as instructed, in contrast to *Savoy*.

Here, the plaintiff spends two pages of her itemized statement reciting the medical evidence of record before specifying the manner in which she contends that the administrative law judge failed to develop the record adequately: he should have had testimony from Dr. Webber, a medical expert who had been asked to attend the hearing. Itemized Statement at [13]-[14]. "By dismissing Dr. Webber, the ALJ plainly failed to fully investigate and develop the record as required by the Supreme Court and in this Circuit." *Id.* at [14]. Because the plaintiff

had submitted a medical opinion that she "met Listing 1.02A at least up to the date of the knee replacement surgery," the plaintiff asserts, the administrative law judge was required to obtain Dr. Webber's testimony "as to whether the Plaintiff's impairments met or equaled Listing 1.02A"[2] and to "allow[] Dr. Webber to testify regarding his medical assessment of Dr. Burtis' opinions[]" concerning her RFC. *Id*.

I begin with bedrock Social Security law: an administrative law judge is never required to consult a medical expert or to "allow" him or her to testify. *Gregoire v. Astrue*, Civil No. 09-246-B-W, 2010 WL 1946302, at *4 (D. Me. May 12, 2010); *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 5 (1st Cir. 1987) (whether to consult medical advisor at hearing is matter solely within administrative law judge's discretion). The plaintiff's argument is contrary to existing Social Security law.

I note further that "Dr. Piers' treating source Listing opinion[,]" on which the plaintiff relies in this regard, does not merit further attention on its face, as described by the plaintiff herself, because it states only that she met a Listing "at least up to the date of the knee replacement surgery." Itemized Statement at [14]. Dr. Piers stated in the cited letter, dated November 20, 2009, that "Ethel Hallock likely met the requirements as described in [section 1.02A] in that she was not able to effectively ambulate because of her arthritic change prior to the total knee replacement performed on 10/06/09." Record at 673.

The plaintiff's knee surgery took place on October 6, 2009. *Id*. Her application was filed on July 19, 2007. *Id*. at 14. Dr. Piers' statement does not support a finding of disability as of

---

[2] During oral argument, the plaintiff's attorney argued that this court should reverse its recent holding in *King v. Astrue*, Civil No. 09-337-P-H, 2010 WL 4457447, at *6-*7 (D. Me. Oct. 31, 2010), aff'd Docket No. 20 (November 22, 2010), to the effect that Listing 1.02A and its applicable regulatory definitions require proof that the claimant cannot ambulate effectively without the use of an assistive device that limits the functioning of both upper extremities. This issue was not raised in the plaintiff's itemized statement and thus has been waived. *Richardson v. Astrue*, No. 1:10-cv-183-JAW, 2011 WL 2600990, at *4 n.4 (D. Me. June 30, 2011), aff'd Docket No. 26 (July 29, 2011). Even if it were properly before this court, I see no reason to depart from the clear language of the regulations.

that date, the relevant date for this claim, 20 C.F.R. § 416.200, or thereafter. At most, the statement supports a closed period of benefits, from the date of the application through the date of the surgery. However, I note also that Dr. Piers opined that the plaintiff would have been capable of sedentary work "prior to surgery." *Id*. at 673. The administrative law judge in this case found that the plaintiff was capable of sedentary work, and Dr. Piers' opinion thus appears to support that conclusion.

Finally, I cannot reasonably construe the plaintiff's itemized statement to argue that the administrative law judge was required to adopt the conclusions of Dr. Burtis or could not himself evaluate those conclusions. Therefore, I do not address them further.

### B. Credibility

The plaintiff frames her next issue as follows in the summary section of her submission: "The Administrative Law Judge's finding that the Plaintiff engaged in work activity after her alleged onset date is material error." Itemized Statement at [10]. The section of the itemized statement discussing this issue, however, describes it as follows: "The Administrative Law Judge's finding that the Plaintiff['s] testimony was not credible is contradicted by the undisputed evidence in the record." *Id*. at [15].

These are two very different issues, as stated.[3] The discussion section of the plaintiff's itemized statement makes clear that it is the second issue -- credibility, not work activity -- that the plaintiff wishes to pursue. *Id*. at [15]-[17]. I, therefore, will address that issue.[4]

---

[3] At oral argument, in response to my question, the plaintiff's attorney asserted that the "work activity" issue was "just an aspect of" the plaintiff's credibility argument.

[4] I do note, however, that the administrative law judge's finding that "the claimant testified that she last worked in November 2007 as a part-time cleaner of offices and apartment building" was accompanied by a conclusion that she had "not engaged in substantial gainful activity at any time since the date she filed her application for benefits[,]" July 19, 2007. Record at 9-10. This is not an adverse finding that "the Plaintiff engaged in work activity after her alleged onset date[,]" Itemized Statement at [10], November 1, 2000, *id*. at [1]. It is a finding, favorable to the plaintiff, that she did not engage in substantial gainful activity after the date of her application for benefits, which is

The administrative law judge stated that the December 27, 2006, record of the plaintiff's treating physician, showing that the plaintiff said that she was "unable to do sheetrock work, which she has been doing for many years . . . in conjunction with the absence of posted earnings after 2000, raises considerable doubt about the reliability of the claimant's assertions" that she had never worked as a drywaller and had worked as a cleaner from 2005 through 2007. Record at 9-10. The other discussions of the plaintiff's credibility are the following:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The references to the claimant's work activity after her alleged onset date and application date, as discussed above, detract from the credibility of her claim that she is disabled from all work. Furthermore, in July 2008, [t]he claimant sought medical attention for acute knee pain which she said had been present for two weeks after she stepped in a hole while doing yard work (Exhibit 20F). Her performance of such work is inconsistent with a conclusion that she cannot engage in sedentary work. The claimant's comment to Dr. Burtis in May 2008 that she could no longer do manual labor such as painting and drywall work because that was all she was trained to do does not suggest an inability to perform unskilled sedentary work (Exhibit 20F).
> * * *
> The claimant has made statements which are inconsistent with her allegation of incapacitating pain. She told Dr. Piers in March 2009 that she was "very pleased with how well she was doing" (Exhibit 24F). His records dated October 2009 indicate that the claimant reported being "very pleased" with the results of the knee replacement, and that she needed no assistive devices for ambulation (Exhibit 35F). In addition, treating source records do not document complaints of drowsiness and forgetfulness due to her medications. In July 2009, Dr. Burtis indicated that the only medication side effect reported by the claimant was weight gain (Exhibit 26F).

Record at 12-13.

---

the relevant date for the purpose of a possible award of benefits. The plaintiff herself testified that she worked in 2005 and 2007. Record at 33-35.

The plaintiff first challenges the administrative law judge's statement that her testimony that she worked from 2005 through 2007 "detracts from the credibility of the claim that she is disabled from all work." Itemized Statement at [15]. She characterizes this as a conclusion based on the fact that the plaintiff "worked under the table in 2007[,]" *id*., but that characterization is incorrect, as can be seen from the excerpts from the opinion reproduced above. The plaintiff asserts that this finding "ignores the only objective evidence" that she last worked on April 22, 2005. *Id*. But, the administrative law judge's finding is based on the plaintiff's own sworn testimony, and he was certainly entitled to weigh that testimony against the one-sentence "To Whom It May Concern" letter on the letterhead of Quadrant Property Management stating, in its entirety, "In regards to Ethel Hallock, to the best of my knowledge her last day was April[] 22, 2005[,]" which the plaintiff offers to refute her own testimony. Record at 298.[5]

The plaintiff next challenges the administrative law judge's reliance on a statement she made to Dr. Piers on March 23, 2009, because the treatment records after that date show that she reported that her "improvements did not continue and her symptoms returned in the spring and summer [of] 2009." Itemized Statement at [15]-[16]. She asserts that the facts that she had to use her cane again, had renewed swelling in her right knee, and had fluid aspirated from her knee three times in June and July 2009 rendered "this 'finding' by the ALJ . . . baseless." *Id*. at [16]. The "finding" to which this argument refers is apparently the "finding that Plaintiff was not credible in her testimony." *Id*. at [15]. However, the administrative law judge cited reasons other than this single entry in Dr. Piers' records for his conclusions regarding the plaintiff's credibility. If one of those reasons is erroneous, that does not necessarily make the conclusions "baseless." In addition, the administrative law judge also cites Dr. Piers' record dated several

---

[5] In any event, it is unlikely that an employer would admit in writing that it paid an employee "under the table."

7

months after the record cited by the plaintiff, a citation which is not challenged by the plaintiff and which provides support for the administrative law judge's conclusion that, in October 2009, the plaintiff was "very pleased" with the results of her knee replacement. *See* Record at 685 (Exhibit 35F).

The plaintiff's third challenge to the administrative law judge's credibility findings is an argument that the administrative law judge was required to disregard the statement in Dr. Burtis's treatment note dated May 21, 2008, because "[i]t makes no sense" that the plaintiff told Dr. Burtis that she had more neck pain at that time because she is doing a lot of manual labor like painting and dry wall "because the Plaintiff never worked in dry wall or was employed as a painter." Itemized Statement at [16]. The plaintiff also contends that the administrative law judge could not rely on this entry in Dr. Burtis's records because it was dated "1 year and 2 months before Dr. Burtis completed her treating source statement so they cover different periods of time." *Id*. at [16]-[17].

I need not delve into the question of whether and under what circumstances a plaintiff may argue that an administrative law judge was required to ignore an entry in her medical records because the administrative law judge in this case did not rely on this entry in Dr. Burtis's records to support his finding that some portions of the plaintiff's testimony were not credible. That entry in Dr. Burtis's records was cited by the administrative law judge in his discussion of the medical opinion evidence relevant to the plaintiff's RFC, Record at 13, not with respect to his assessment of the plaintiff's credibility in her testimony about the intensity, persistence, and limiting effects of her symptoms. *Id.* at 12-14. The entry is cited to illustrate that "it is unclear at what point D[r]. Burtis believes the claimant became unable to work." *Id*. at 13.

Finally, the plaintiff asserts that "the ALJ's references to treatment records in 2007 and 2008 supposedly showing that the Plaintiff's knee range of motion and strength, sensation, reflexes, and coordination were intact, make absolutely no sense as a basis for his finding that the Plaintiff's testimony is not credible." Itemized Statement at [17]. The plaintiff does not indicate where in his opinion the administrative law judge made such references in connection with his evaluation of her credibility. The only references to treatment records in 2007 and 2008[6] that I find in the administrative law judge's opinion are made in the course of a discussion of whether the plaintiff could perform sedentary work at the relevant time. Record at 13. This discussion does not deal with the plaintiff's credibility.

## C. Treating Source Opinions

The plaintiff's third and final issue is presented as follows: "The Opinions of the Treating Sources were not inconsistent with the other medical evidence of record, and the Administrative Law Judge did not give supportable reasons for rejecting the treating source opinions for the time period in question." Itemized Statement at [10], [17]. She asserts that the administrative law judge was required to adopt the limitations indicated by Dr. Burtis and "the Listing opinion from Dr. Piers" because they were not inconsistent with any other medical evidence and so should have been given controlling weight. *Id.* at [19]-[20].

I have already discussed in Section I.A Dr. Piers' "Listing opinion" and the reasons why it could not have been adopted by the administrative law judge, particularly as the plaintiff interprets it, let alone be given controlling weight.

A medical opinion by a treating source such as Dr. Burtis is given controlling weight when it is well supported by medically acceptable clinical and laboratory diagnostic techniques

---

[6] As previously noted, the plaintiff's date of application was July 19, 2007, so only medical records from that date forward are relevant to her claim.

9

and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2); Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-2p"). The commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] your treating source's opinion." 20 C.F.R § 416.927(d)(2).

Opinions of treating sources are never entitled to controlling weight when they address RFC, a determination reserved to the commissioner. *See* 20 C.F.R. § 416.972(e)(2)-(3) (as to RFC, even the opinions of treating sources are accorded no "special significance"). Nonetheless, an administrative law judge must supply "good reasons" for discounting the RFC opinion of a treating source. *See id*. To the extent that the plaintiff means to argue that Dr. Burtis's opinion that she was "unable to work part time or Full Time[,]" Record at 644, and that she "can't do any[,]" work at any exertional classification, *id*. at 646, must be given controlling weight, those are opinions addressing RFC and can never be given controlling weight, as the cited regulations make clear.

With respect to Dr. Burtis's opinions, the administrative law judge's opinion includes the following relevant statements:

> Dr. Burtis's records dated March and July 2007 indicate that the claimant had full range of motion in all joints and normal sensation, reflexes, coordination and strength (Exhibit 8F). Physical examinations done in September and December 2007 were normal (Exhibit 9F). . . . Dr. Burtis indicated in August 2008 that the claimant's desire for narcotic analgesia was out of proportion to her symptoms and findings upon examination (Exhibit 20F). . . . Dr. Burtis's records from April and July 2009 indicate that the claimant had no neurological deficits (Exhibits 29F, 36F).
> \* \* \*
> In July 2009, Dr. Burtis indicated that the only medication side effect reported by the claimant was weight gain (Exhibit 26F).
> \* \* \*
> As for the opinion evidence, Dr. Burtis indicated in July 2009 that the claimant was unable to do any work (Exhibit 26F). However, in May

2008, she stated that she did not recommend that the claimant file for disability benefits, but instead charge more for her work and work less (Exhibit 20F). Thus, it is unclear at what point D[r]. Burtis believes the claimant became unable to work.

Record at 13.

While the plaintiff's itemized statement unsuccessfully attempts to dismiss medical evidence that is in fact inconsistent with the physical limitations found by Dr. Burtis, I agree that the administrative law judge's opinion does not comply with the regulatory requirement that it supply "good reasons" for rejecting Dr. Burtis's detailed opinion. *See, e.g., Gilks v. Astrue*, No. 1:10-cv-357-DBH, 2011 WL 2580646, at *4 (D. Me. June 28, 2011); *Miller v. Astrue*, No. 2:10-cv-43-DBH, 2011 WL 135750, at *3-*4 (D. Me. Jan. 13, 2011). At oral argument, the commissioner's attorney asserted that the administrative law judge "could have been clearer," but that it was "evident from the discussion" that he gave Dr. Burtis's opinion "little weight." That does not change the fact that the administrative law judge did not give the required "good reasons" for doing so.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

***Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.***

Dated this 23rd day of September, 2011.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge